MORGAN HARRIS AND ETHELDRA,
HIS WIFE,
vs.
WILLIAM MORRIS.

December Term, 1847.

[EVIDENCE.]

Two co-heirs executed a deed of partition, in which they mutually covenanted that each should hold his part of the land free, and discharged from all title, interest, claim and demand of the other, but neither covenanted to assume the title of the other. HELD—

That one of these co-heirs is a competent witness for the other in an action brought by the latter against a third party, involving the title to a part of the estate conveyed to the plaintiff by the deed of partition.

A vendor of land selling in good faith is not responsible for the goodness of his title beyond the covenants in his deed.

[The bill in this case was filed by Morgan Harris and Etheldra his wife, to enjoin an ejectment suit brought by the defendant, William Morris, for a tract of land called "Morris Landing," and to obtain a conveyance of the legal title to the same by a decree for the specific performance of an agreement between said Morris and Samuel Chapman, the ancestor of complainant's said wife, in relation to the sale of said land.

It alleges that in 1817, Samuel Chapman, of Charles county, discovering a vacancy adjoining his lands on the Potomac river, agreed with said Morris that they together should take up the same; that the patent should issue to Morris, but the land should be held equally between them, each owning one-half thereof; that said Chapman paid $77 27, the caution money, on the 1st of March, 1817, to the state, and the receipt of the treasurer therefor is exhibited with the bill; that in pursuance of this agreement, the land was patented to Morris, and called "Morris Landing," containing 52¼ acres. That afterwards, said Chapman being about to sell all his lands on the Potomac, purchased of Morris all his interest in said tract, being one moiety thereof. That in part performance of this contract, said Chapman was put in possession of the whole tract, and remained in possession thereof from that time until his death,

44*

in 1825. That the complainant, Etheldra, is one of the heirs at law of said Chapman, and in the division of his real estate, this land was allotted to her as a portion of her inheritance, and that complainants have been and still are in possession of the same, but Morris has never executed a deed therefor, but has instituted an action of ejectment to recover possession thereof. The bill then prays for an injunction to restrain this ejectment suit, and that Morris may be decreed to convey the title to the land to complainants, and for general relief.

Morris, in his answer, says, he is ignorant of the alleged division of Samuel Chapman's estate, and positively denies any contract or agreement on his part for or touching one-half or any part of "Morris Landing." He avers that, being interested in certain lands formerly belonging to one Knox, he was informed of the vacancy called "Morris Landing," and accordingly, in 1817, obtained a special warrant to affect said vacancy, as appears by the patent and surveyor's records, exhibited with his answer. That about the same time, for the benefit of himself and one Hanson, he obtained another special warrant to affect other vacancy, and finding that Samuel Chapman had also obtained another warrant of resurvey, it was agreed between Hanson, Chapman and himself, that the warrant obtained by Chapman should be executed instead of the one for the joint use and benefit of Hanson and himself, and that the costs of the survey should be paid by himself and Chapman ; that this warrant was executed, and all the costs paid by himself, and the warrant was laid on lands entirely different from "Morris Landing," and the lands thus taken up by Chapman were called "Smithfield." That Chapman paid the caution money on "Morris Landing," not because he was interested therein, but because he, Morris, paid the whole cost of Smithfield. He denies that he ever sold, or offered to sell, either "Smithfield," or "Morris Landing," to Chapman ; that said Chapman always admitted that "Morris Landing" was respondent's property, and rented the same for several years before his death from respondent, who had the exclusive possession thereof for several years after the survey and patent aforesaid,

and rented the same to sundry persons. He then denies that there was any agreement, parol or written, and insists "that if there was any agreement, it was not reduced to writing, and signed by the parties, as required in such cases by law," and also denies that the caution money was paid, or possession taken under any such agreement as is set up in the bill.

The testimony chiefly relied upon to sustain the allegations of the bill, was that of John G. Chapman, a son and heir at law of Samuel Chapman, and Elizabeth Chapman, the widow of said Samuel Chapman.

John G. Chapman proves, in substance, that he frequently heard both Samuel Chapman and the defendant, Morris, say, that the vacancy was discovered by Chapman, and at that time the adjoining land was owned by one of the Jenifer family. That Chapman told Morris of the vacancy, and the latter proposed to take it up in his own name, alleging that Jenifer had once interfered with him in relation to some land ; that Chapman consented that the land should be taken up in Morris' name, and agreed with Morris that he should have one-half, and Chapman the other, and the land was taken up with that understanding and agreement ; that the warrant was obtained in Morris' name, and the patent issued to him in virtue of the understanding between him and Chapman, that the land was to be held as their joint property. That witness has also been told both by said Chapman and Morris, that the former was to purchase the latter's half of "Morris Landing," provided he got the adjoining land, which had been owned by Jenifer, and sold to one Dunnington, and was to allow him the price he paid for Dunnington's land, $8 *per acre*, and Dunnington's land was purchased by Chapman in 1821. That the land was always held by said Chapman, except a part of the shore, which was rented one year to a man from Virginia as a fishery, and for the rent of which suit was brought in Morris' name, because he and Chapman both having been present at the renting, it was agreed between them that Morris should receive the rent, as Chapman was a witness to the contract, but that Morris told witness the whole land then belonged to Chapman, who

was to credit him for his half thereof upon a settlement of their dealings. That said Chapman was in possession of the whole of this land up to the time of his death, in 1825, renting the same, and receiving the rent therefor; that Morris never claimed any part of it until after the division of Samuel Chapman's estate, in 1827, by which this land was allotted to the complainant, Etheldra, the wife of Harris.

Elizabeth Chapman proves that upon one occasion Morris came to her husband's residence, and had some conversation with him in reference to this land. That witness understood, from what passed between them, that Morris was to have one-half of the land for his trouble, and that her husband was to pay Morris for his half by giving him credit for it. This occurred long after the land was taken up. Her husband held possession of the land from the time it was taken up until his death in 1825.

The defendant objected to the testimony of both these witnesses, upon the ground of interest in the result of the suit, the former by reason of being one of the heirs at law of Samuel Chapman, and entitled to a moiety of his real estate; the latter as being the widow of the deceased, and entitled to dower in his real estate.

The division of the estate of said Chapman referred to in the proceedings, was effected by a deed of partition, executed on the 3d of October, 1832, between John G. Chapman and Harris and wife. This deed is to the purport following: after reciting that the parties, John G. Chapman and Etheldra Harris, hold, as tenants in common, in equal shares, the lands of which they are seized in fee as the heirs at law of Samuel Chapman, and that they have agreed to divide and hold their respective shares in severalty, it is thereupon covenanted, granted and agreed by and between them, that each shall hold, possess and enjoy in severalty the respective portion allotted by said partition, and which each of them, by the said deed of partition, doth grant, release and confirm to the other, with the *mutual* covenant and grant, that each party shall forever peaceably, quietly have, hold, occupy, &c., free and discharged

from all title, interest, claim and demand of the others, their heirs and assigns, &c.]

THE CHANCELLOR:

The bill in this case was filed in the year 1833, on the equity side of Charles County Court, and prays that the defendant may be compelled to convey to the complainants, Morgan Harris (since deceased) and his wife Etheldra, a parcel of land in said county, called "Morris Landing." After various proceedings in the County Court, it was transferred under the act of Assembly to this court, and is submitted for decision upon notes in writing of the solicitors of the parties.

The agreement alleged in the bill is, it is true a parol agreement, but a part performance of it, is distinctly averred, and a long possession of the party under whom the complainants claim is also charged.

The answer, however, denies the agreement, and impliedly, rather than expressly, relies upon the Statute of Frauds.

My opinion is, that the complainant's case is clearly established by the proof, if John G. Chapman and Elizabeth Chapman are competent witnesses, and I do not see how they can be considered incompetent. John G. Chapman and the surviving complainant were the heirs at law of the late Samuel Chapman, and after his death, by their deed making partition of the estate, executed on the 3d of October, 1832. Each conveyed to the other certain parcels thereof, to be held in severalty with a covenant that each should hold the parcels so conveyed free from any claim or demand on the part of the other, or his or her heirs, but neither covenanted to assure the title of the other.

In this division the land in question fell to the share of the complainant, and it is supposed that if she fails in this suit, there is some sort of responsibility on the part of the witness to compensate her for the loss, and that, therefore, he is disqualified on the ground of interest. But I do not think so. A vendor of land, selling in good faith, is not responsible for the goodness of his title beyond the covenants in his deed. *Gouver-*

*neur* vs. *Elmendorf,* 5 *Johns. Ch. Rep.,* 79. And as there can be no doubt of the good faith of the witness, and he has not by his covenant warranted the title, except as against himself and his heirs, I think him a competent witness. As to Mrs. Elizabeth Chapman, no disqualifing interest is shown in her. But conceding that she is not competent, (though I certainly think she is,) the very full and conclusive evidence of John G. Chapman, together with the other circumstances of the case is, in my opinion, quite sufficient to entitle the complainant to a decree.

As there seems to be some doubt whether the purchase money was paid, a decree will be signed for a specific performance of the agreement on payment of the purchase money, or on its being made to appear by satisfactory evidence that it has been paid.

[The decree of the Chancellor in this case was affirmed upon appeal. See 9 *Gill,* 19.]

ALEXANDER, for Complainants.
MAY and ROBT. J. BRENT, for Defendant.